UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Zuru (Singapore) PTE., LTD.,<br>Zuru LLC,<br>Zuru Inc.,<br><br>Plaintiffs,<br>v.<br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS, AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A HERETO,<br>Defendants. | Case No.: 1:21-cv-2180<br>Judge Martha M. Pacold<br>Magistrate Judge Susan E. Cox |

**MEMORANDUM OF LAW OBJECTING TO THE ENTRY OF**
**DEFAULT JUDGMENT AND IN SUPPORT OF MOTION TO DISMISS**

Defendants enjoy ur life ("EUR") and million*billion ("MB"; collectively, the

"Defendants") respectfully submit these Objections to the entry of default judgment and their

Motion to Dismiss (the "Motion").[1]  If this Court does not dismiss all four counts against

Defendants, Defendants respectfully request 20 days from the date of this Court's order to

submit an answer to any of the counts in the Complaint that remain.  In a separate motion,

Defendants also move to dissolve the preliminary injunction entered by this Court on June 2,

2021 (Dkt. # 39), primarily on the ground that Plaintiffs cannot succeed on the merits of their

claims because Defendants do not use and have never used any of the purported trademarks or

copyrighted images.  As discussed more fully below, the fact that Defendants do not use and

have never used any of the purported trademarks or copyrighted images also warrants dismissal

of the claims against them.

---

[1]     To address the issues of default judgment and personal jurisdiction, Defendants respectfully
submit the Declaration of Gangkui Zhang (the "Zhang Dec.").

## PRELIMINARY STATEMENT

This case is one of a burgeoning number of cases being filed in this District that all follow a nearly uniform pattern. Plaintiffs, purporting to own certain intellectual property, sue large groups[2] of foreign defendants for infringement. Plaintiffs institute these cases *ex parte*, seeking first a restraint on defendants' internet stores and accounts and then a preliminary injunction. On the expectation that the majority of defendants—all foreign businesses—may not realize immediately that they have been sued in this District and may be unfamiliar with the American legal system—these plaintiffs finally move for default judgment, hoping that most of these foreign defendants will simply settle or take the default. This Court recently presided over such a case, *Oakley, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* Case No. 20-cv-06676, in which no defendant appeared to contest the entry of default judgment and Final Judgment was entered on February 4, 2021.

Defendants are the latest such defendants to be swept up in these kinds of cases. As set forth more fully below, Defendants respectfully submit that, not only is default judgment unjustified against them, the case against them should be dismissed.

## ARGUMENT

I. DEFAULT JUDGMENT IS NOT WARRANTED HERE.

As an initial matter, Defendants address the issue of default judgment. The relevant timeline in this case demonstrates that the extreme sanction of default judgment is not appropriate as to the Defendants. The first notice Defendants received of this case was not April

---

[2] Although these types of cases follow a nearly uniform procedural pattern, they do differ in terms of the numbers of defendants plaintiffs join in a single case, ranging from 79 defendants in a case before Judge Chang, *Estee Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020), to 3,343 defendants in a case before Judge Blakely, *Am. Bridal & Prom Indus. Ass'n v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 932 (N.D. Ill. 2016).

22, 2021, when the Complaint was filed; Defendants did not receive notice of this case until approximately five weeks later, on May 31, 2021. (Zhang Dec. ¶ 3.) On June 2, 2021, this Court entered a preliminary injunction (Dkt. # 39), which was unopposed. (Dkt. # 38.) Defendants—from China—had difficulty retaining satisfactory U.S. legal representation because Defendants have no experience with the U.S. legal system and because Defendants' first attempt to retain counsel encouraged settlement, which was not satisfactory resolution to Defendants in light of the accusations being made by Plaintiffs. (Zhang Dec. ¶¶ 2-4.) On June 21, 2021, Plaintiffs moved to default. (Dkt. # 54.) Defendants had their original counsel withdraw and substituted with current counsel on July 1, 2021. (Dkt. # 73-77.) Current counsel then promptly sought an extension to respond to Plaintiffs' motion for default (Dkt. # 78), which was granted on July 6 (Dkt. # 83).

Defendants, foreign businesses unfamiliar with the U.S. legal system, acted diligently to retain acceptable counsel, who then acted promptly to appear in and respond to this lawsuit. In this case, the harsh sanction of default judgment is not warranted. *See, e.g., Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981) (vacating district court's denial of Rule 60(b)(1) motion where record revealed "no willful pattern of disregard for the court's orders or rules and defendants were "burdened with a . . . judgment with no opportunity to present their defenses"). Defendants' prompt actions have not resulted in any undue or prejudicial delay to Plaintiffs. Defendants are under a preliminary injunction, and Defendants acted within the time set by this Court to raise objections to Plaintiffs' motion to default.

Moreover, Defendants have meritorious defenses that they believe deserve a hearing in this case, as discussed more fully below. The Complaint fails to state a claim against Defendants specifically and instead relies on generalized and vague allegations. Along similar lines, there is

no basis for Plaintiffs' grouping of all these Defendants together with over 100 other defendants with which it has no connection whatsoever. Lastly, there is an insufficient basis here for the exercise of personal jurisdiction over Defendants.

In sum, the extreme sanction of a default judgment is unjust as to Defendants. *See, e.g.*, *W. Bend Mut. Ins. Co. v. Belmont State Corp*., No. 09 C 354, 2010 WL 11712781, at *1 (N.D. Ill. Apr. 16, 2010) (granting motion to vacate default judgment where, *inter alia*, "a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing.") (citation omitted); *see also Simon v. Pay Tel Mgmt., Inc.*, v. 782 F. Supp. 1219, 1227-30 (N.D. Ill. 1991); *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc*., 856 F.2d 873, 877 (7th Cir. 1988) (vacating district court decision granting default judgment, determining that "[w]e believe that the judge did abuse her discretion here by entering the default judgment in the absence of any bad faith or willfulness without first employing any lesser sanction").

## II.    THE COMPLAINT FAILS TO STATE A LEGALLY COGNIZABLE CLAIM.

Plaintiffs' attempt to stuff over 100 defendants together into a single case have resulted in a vague Complaint that does not satisfy even the liberal pleading standards under the Federal Rules in at least the following respects.

*First*, Plaintiffs' pleading of their flagship trademark infringement claim (Count I) is patently deficient. Plaintiffs assert that "Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with *either one or both* of the BUNCH O BALLOONS Trademarks . . . ." (Compl. at ¶ 30) (emphasis added).) Accusing Defendants of infringing "either one or both" of the trademarks at issue fails to provide Defendants even basic notice of

-4-

Plaintiffs' central claim. Plaintiffs cannot be excused from even identifying which trademark or trademarks they are asserting against Defendants. *See, e.g.*, *Allison Transmission, Inc. v. Fleetpride, Inc.*, No. 1:16-cv-02455-LJM-MJD, 2017 WL 1282994, at *4 (S.D. Ind. Apr. 5, 2017) (granting motion for a more definite statement where the factual allegations at issue failed to provide sufficient notice because complaint "merely allege[d] that [defendant] infringed on 'one or more' . . . trademarks, without further defining to which of its trademarks it refers or how [defendant] actually infringed upon its trademarks").

In any event, Plaintiffs *cannot* state a claim of infringement against Defendants for infringement of either or both of the "BUNCH O BALLOONS" trademarks[3] because Defendants simply do not use either of the trademarks. As part of their *Ex Parte* Motion, Plaintiffs submitted hundreds of pages screenshots of the online stores of the 100+ defendants that Plaintiffs assert show infringement. (Dkt. #15.) The screenshots specific to Defendant EUR and Defendants MB have been excerpted and attached to this Memorandum as Exhibits 1 and 2, respectively. They show that neither of the Defendants' online stores use either of the "BUNCH O BALLOONS" trademarks. *See Pintea v. Varan*, No. 16-cv-5990, 2016 WL 6877627, at *1 (N.D. Ill. Nov. 22, 2016) ("In reviewing a motion to dismiss, we may look to matters of public record outside of the pleadings, including . . . public court documents[.]") (citation omitted) (alteration in original); *Maxwell v. Cty. of Cook*, No. 10 CV 00320, 2011 WL 4639530, at *3 (N.D. Ill. Mar. 17, 2011) ("Further, in ruling on a 12(b)(6) motion, the district court may consider matters *of public record* outside of the complaint.") (emphasis added).

---

[3] The phrase "BUNCH O BALLOONS" trademarks is Plaintiffs' phrase referring collectively to the trademarks at issue in this case—one for the phrase "BUNCH O BALLOONS" and one for the word "BUNCHO."

With respect to Counts II and III, which both piggyback on Plaintiffs' trademark infringement, Plaintiffs rely entirely on the legal conclusion that Defendants' products are creating a likelihood of confusion for unspecified reasons, a legal conclusion that Plaintiffs simply repeats. (Compl. at ¶¶ 36, 41.) Attempting to pass off legal conclusions as facts does not state a claim. Plaintiffs fail to identify facts supporting the conclusion that the unidentified product or products cause a likelihood of confusion. These failures do not provide adequate notice and fail to state a claim. *See, e.g., Fortres Grand Corp. v. Warner Bros. Entmt. Inc.*, 763 F.3d. 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, Case No. CV 17-2574 PSG (Ex), 2018 WL 6137189, at *5 (C.D. Cal. Feb. 13, 2018) (granting motion to dismiss because "[t]he mere allegation, unaccompanied by factual support, that consumers are likely to mistake a defendant's goods for plaintiff's goods is insufficient to survive a motion to dismiss") (quoting *McCall's Country Canning, Inc. v. Paula Deen Enters., LLC*, No. 09cv0952-LAB (BLM), 2010 WL 11508996, at *2 (S.D. Cal. Feb. 8, 2010)).

Plaintiffs' count for copyright infringement is perhaps the best illustration of how deficient the type of sweeping group pleading Plaintiffs relies upon is. Plaintiffs first claim "direct copying" by "Defendants," presumably referring to all 100+ defendants. (Compl. at ¶ 48.) "Alternatively," Plaintiffs claim that product "representations" by Defendants are either "strikingly similar" or "substantially similar." (*Id.*) Plaintiffs provide what purports to be an exemplar image belonging to one or more of the 100+ defendants. (*See id.*) Nothing connects that exemplar image to either Defendant EUR or Defendant MB. Plaintiffs—who have the burden of adequately stating their claims—have pasted into their Complaint an image that seems

-6-

to be from the Etsy website and slapped a generic label on the image, calling it "Defendant Online Store selling counterfeit Bunch O Balloons."

Etsy is but one of multiple platforms hosting allegedly infringing images; as set forth in the Complaint's Prayer for Relief, there are also allegedly infringing images on website and social media platforms such as Ebay, Amazon, AliExpress, Alibaba, Etsy, DHGate, ECrater, Facebook, Twitter, YouTube and LinkedIn. Taking that list of platforms and websites as accurate for purposes of this Motion pursuant to Rule 12(b)(6), the obvious question is—what notice regarding copyright infringement does an unidentified image from Etsy provide to these Defendants that do not use Etsy? (*See* Zhang Dec. at ¶ 1) (testifying that Defendants use Ebay)); the answer is—not enough to state a copyright claim.

Furthermore, as with Plaintiffs' trademark infringement claims, Plaintiffs *cannot* state a claim of copyright infringement against Defendants because Defendants do not use the copyrighted images. Again, the screenshots Plaintiffs submitted of defendants' allegedly infringing product images show that the images specific to Defendant EUR and Defendant MB do not include the copyrighted images at issue.[4]

III.    DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE NOT PROPERLY JOINED HERE.

As set forth above, when the claims in the Complaint are examined as to these specific Defendants, it is apparent that Plaintiffs have failed to state any legally cognizable claims against these Defendants. What is also apparent is that Plaintiffs have taken permissive joinder pursuant

---

[4]     At the bottom of the screenshots attached as Exhibits 1 and 2, there are images for "Related Sponsored Products," but those are not part of Defendants' online stores. The "Related Sponsored Products" are advertisements that reflect a user's search history. In any event, the lack of identification of the specific images on Defendants' online stores that allegedly show "direct copying," or images that are allegedly "strikingly similar" or "substantially similar" should be held against Plaintiffs, warranting dismissal.

to Rule 20 of the Federal Rules too far. Plaintiffs have improperly joined Defendants into this case, even though Defendants plainly do not belong in it.

It is important to consider the breadth of what Plaintiffs are claiming here. Plaintiffs are claiming that 138 defendants infringe two trademarks and one copyright across at least 14 websites, platforms and/or search engines. The Complaint makes almost no attempt to state claims with allegations specific to each defendant's allegedly infringing activities. The only attempt at specificity is on page 16 of the Complaint, which compares Plaintiffs' allegedly copyrighted image against one defendant's online store on Etsy, funzone123.[5] Not only does an image on *Etsy* have nothing to do with Defendants' *eBay* stores, it highlights how improper joinder is here because there are at least two key differences between the Etsy store and Defendants' eBay stores: (1) Defendants' stores do not use the "Bunch O Balloons" phrase and (2) Defendants' stores do not use the allegedly copyrighted images. Not only are those two differences fatal to Plaintiffs' claims, even at the pleadings stage, they beg the question: On what basis are Defendants lumped into the same case as the funzone123 defendant?

To the extent that joinder here is premised upon the accusation that Defendants are, with the other 100+ defendants, part of a "massive counterfeiting operation," (Compl. at ¶ 22), that premise is a wholly unproved accusation—nothing more. While Plaintiffs do discuss the evils of counterfeiting at length, missing are factual allegations demonstrating that *these* Defendants are counterfeiters. Paragraph 17 of the Complaint is but one example of Plaintiffs making sweeping statements about counterfeiting generally in an attempt to impute to *these Defendants specifically* what *counterfeiters generally* do. (*See also, e.g.*, Compl. ¶¶ 24-25.)

> Internet websites *like the Defendant Internet Stores* are estimated
> to receive tens of millions of visits per year and to generate over

---

[5]     A store called "funzone123" is listed in Schedule A to the Complaint as defendant number 10.

> $135 billion in annual online sales. According to an intellectual
> property rights seizures statistics report issued by the United States
> Department of Homeland Security, the manufacturer's suggested
> retail price ("MSRP") of goods seized by the U.S. government in
> fiscal year 2017 was over $1.2 billion. Internet websites *like the
> Defendant Internet Stores* are also estimated to contribute to
> tens of thousands of lost jobs for legitimate businesses and broader
> economic damages such as lost tax revenue every year.

(Emphasis added). Even viewed in the light most favorable to Plaintiffs for purposes of Rule

12(b)(6), allegations about what online stores "like" Defendants are of no moment here; the only

thing that is relevant is what *these* Defendants do. Plaintiffs' own *Ex Parte* Motion papers show

that Defendants' online stores do not bear even the basic hallmarks of counterfeiters—they

include neither the trademarks nor the copyrighted images at issue. (Exs. 1 & 2.)

There are two attempts at stating factual connections amongst the Defendants. The first

is that, "upon information and belief, [Defendants] reside mainly in the People's Republic of

China or other foreign jurisdictions." (Compl. at ¶ 16.) The second is that there are "numerous

similarities" amongst the Defendants' internet stores. (*Id.* at ¶ 23.) These assertions are

woefully insufficient to support the incredible notion that "Defendants" are an "interworking"

and "massive counterfeiting operation." (*Id.* at ¶ 22.) It cannot be the case that Chinese or

"other foreign" residents can be assumed to be counterfeiters; accordingly, rhetorical assertions

about "tactics" typically employed by counterfeiters provide Plaintiffs no support at all. (*See,

e.g.*, *id.*) (recounting "common practice for counterfeiters").)

The general reference to "numerous similarities" amongst the Defendants' internet stores

is untrue—based upon an examination of the screenshots Plaintiffs themselves submitted with

the *Ex Parte* Motion. *First*, the store images are clearly different. Some defendants' stores use

the word "Bunches"; some defendants' stores use the phrase "Bunch O." (*Compare* Dkt. #15-2,

at 105-06, *with* Dkt. #15-1, at 267.) Some defendants' stores show images of loose, unfilled

balloons; some defendants' stores show images of filled balloons. (*Compare* Dkt. #15-2, at 267, *with* Dkt. #15-2, at 126.) *Second*, unlike Plaintiffs' allegation that the products at issue are "similarly priced" (Compl. at ¶ 23), Plaintiffs' screenshots show a wide-range of prices. While Defendants' products are priced at £1.98 (Exs. 1& 2), other defendants' prices include $9.99 to $18.50 to $21.99. (Dkt. #15-2, at 105-06; Dkt. #15-2, at 267.) Plaintiffs' grouping of Defendants in this matter with over a hundred unrelated other parties is an abuse of Rule 20 joinder. *See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (Posner, J.) ("The purpose of Rule 20(a) in permitting joinder in a single suit of persons who have separate claims, albeit growing out of a single incident, transaction, or series of events, is to enable economies in litigation, *not* to merge the plaintiffs' rights so that the *defendant loses defenses* that he might have had against one of the plaintiffs.") (emphasis added).

This Court has wide discretion in dealing with improper joinder, *see Martinez v. Haleas*, No. 07 C 6112, 2010 WL 1337555, at *4 (N.D. Ill. Mar. 30, 2010) (dismissing newly-added parties pursuant to Rule 21), and the recent decision in *Estee Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020) is instructive here. *Estee Lauder*, 334 F.R.D. at 187 (considering *sua sponte* the joinder of dozens of defendants and determining that joinder was improper because "time and again the courts of this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark") (citing cases). In reviewing the joinder of the 79 defendants at issue, this Court recognized that the convenience to the plaintiff of joining disparate defendants into a single lawsuit was not sufficient to warrant joinder. *See id.* ("[W]hen viewed from the defense perspective, there is nothing that one defendant could advance in defending a case that would be dependent on an unrelated codefendant. So a blunderbuss theory

-10-

of joinder would require each trademark-infringement defendant to monitor the docket and the filings pertaining to dozens or hundreds of co-defendants."). The Court further determined that the type of mass grouping of defendants—solely on the basis of alleged infringement of the same intellectual property—would thwart the interests of judicial economy that joinder is meant to promote. *See id.* at 189 ("But presenting dozens or hundreds of defendants in one lawsuit actually undermines judicial economy, because this Court must evaluate the evidence submitted in support of liability and, eventually, damages. That is especially true in the *ex parte* setting of a temporary restraining order, as well as for default-judgment motions. It is much more of a burden to satisfy that duty when there are dozens or hundreds of online retailers named in one case."). In *Estee Lauder*, the Court ultimately ordered those plaintiffs to submit an amended complaint accompanied by a "memorandum explaining specifically why each Defendant is properly joined to all of the others." *Id.* at 190.

In this case, Plaintiffs' improper efforts at joinder—when viewed with the overall failure to state a claim—warrant dismissal of the Complaint as to Defendants. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (Easterbrook, J.) ("The more claims and defendants in a complaint, the longer screening [by the court] will take. The more frivolous claims in a complaint, the more a judge is apt to infer (if only subconsciously) that the plaintiff is crying wolf with respect to all of the claims."); *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 58 (7th Cir. 1982) (affirming district court's dismissal of improperly joined defendant).

IV.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE 12(B)(2).

Plaintiffs have the burden of stating a *prima facie* case of personal jurisdiction as to Defendants. *See Bittman v. Fox*, No. 14 C 08191, 2015 WL 5612061, at *5 (N.D. Ill. Sept. 23,

2015).  Plaintiffs rely solely on Defendants' alleged operation of websites that can be accessed

by people in Illinois and that offers products shipped to Illinois.  In paragraph 6, Plaintiffs assert:

"Defendants are reaching out to do business with Illinois residents by operating one or more

commercial, interactive Internet Stores through which Illinois residents can purchase products

bearing counterfeit versions of either one or both of Plaintiffs' trademarks. Each of the

Defendants has targeted sales from Illinois residents by operating online stores that offer

shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on

information and belief, has sold products bearing counterfeit versions of either one or both of

Plaintiffs' federally registered trademarks to residents of Illinois."  (Compl. at ¶ 6.)

　　　　Accepting Plaintiffs' argument would mean that the Courts of this District should expect

to exercise jurisdiction over any entity operating a website available in Illinois that offers

shipping in the United States, an idea that Judge Blakely warned against given that these types of

lawsuits are "not uncommon in this District."  *See Am. Bridal & Prom Indus. Ass'n v. The*

*P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 932 (N.D. Ill.

2016).  Specifically, Judge Blakely determined that personal jurisdiction was not proper where a

plaintiff cannot show:

> that the websites were any more accessible in Illinois than
> anywhere else in the world; . . . that any Illinois residents actually
> accessed the websites; . . . [that] any injury occur[ed] in Illinois; . .
> . that . . . Defendant took any action with respect to Illinois in
> particular.  [Plaintiff has] not alleged or shown that any of the
> Defendants specifically agreed to ship to Illinois or that they
> otherwise reached out to, or expressly aimed their activities at, this
> state or its residents.

*Am. Bridal*, 192 F. Supp. 3d at 934 (dismissing complaint).  All of the factors outlined by Judge

Blakely are absent from Plaintiffs' Complaint.  There is no factual allegation in Plaintiffs'

Complaint that the websites operated by Defendants was directed at and more accessible in

Illinois.  There is no factual allegation that Defendants specifically agreed to ship any product to Illinois.  The screenshots included with Plaintiffs' *Ex Parte Motion* suggests that orders were placed on Defendants' stores by or for a person in Bolingbrook, Illinois.  (Exs. 1 & 2.)  However, as sworn to in the Zhang Dec., no order was actually completed on either store.  (Zhang Dec. ¶ 5.)  Unless refuted by Plaintiffs, the sworn testimony provided by Defendants on this issue controls.  *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015) ("Unrefuted facts in Defendant's affidavits, however, will be taken as true.") (citation omitted).

There is nothing substantive connecting Defendants to this District.  *See Siegel v. HSBC Holdings, PLC*, 283 F. Supp. 3d 722, 729 (N.D. Ill. 2017) (declining to exercise personal jurisdiction where plaintiff failed to demonstrate that its claims arose directly out of any contacts with Illinois).  This is precisely the type of case that should not be in this District, where these cases are already "not uncommon."  *Am. Bridal*, 192 F. Supp. 3d at 932; *see also Henneberger v. Ticom Geomatics, Inc.*, 602 Fed. App'x. 352, 353 (7th Cir. 2015) (affirming dismissal for lack of personal jurisdiction because mere assertion of minimum contacts without evidence supporting the assertion was insufficient).

***

Plaintiffs' Complaint is essentially a shell game.  Plaintiffs appear to believe that by broadly branding Defendants "counterfeiters," Plaintiffs can evade their most basic responsibility in alleging claims of copyright and trademark infringement—demonstrating that these Defendants specifically use the trademarks and copyrighted images at issue.  Indeed, as set forth above, Plaintiffs cannot make this showing.  Plaintiffs' attempted shell game should be rejected, and their Complaint dismissed.

## **CONCLUSION**

In light of the foregoing, Defendants respectfully requests that this Court deny Plaintiffs'

Motion for Default Judgment and grant Defendants' Motion to Dismiss, and such other and

further relief as this Court deems just and proper.  If this Court does not dismiss all four counts

against Defendants, Defendants respectfully requests 20 days from the date of this Court's order

to submit an answer to any of the counts in the Complaint that remain.


enjoy_urlife and million*billion


By:/s/ Wesley Johnson
One of their attorneys



Wesley Johnson (Illinois ARDC #6225257)
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828
Fax: (312) 264-2535
wjohnson@goodtov.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on July 20, 2021, I served a copy

of the attached **MEMORANDUM**, on all parties who have appeared via ECF.

By:/s/ Wesley Johnson